The hill was filed in this case to recover an estate to which the complainant’s testator was alleged to be enti-tied, under the will of Ms father Elias Ball. The testator by his last will, executed on the 18th August, 1757, after directing the payment of debts, bequeathed the remainder of his estate, real aiid personal, to he equally divided among Ms four children, William, Ann, Helena, and Samuel: And in cáse Ms son William or any of his other children happened to die, he oi’dained and willed the remaining parts of his or their interests to be equally divided amongst his surviving heir or heirs. William and Helena died soon after the testator, under age and unmarried. Ann married Mr. John Hunt, upon her application the executor divided the personal estate into two equal parts, and delivered one half thereof to the said John Hunt and Ann his wife, some time in February, 1769: And the acting executor H. Laurens retained the other moiety for the other child Samuel, then a minors and afterwards sold the negroes, stock, &c. and his half of the land, and retained the Securities in his own hayds, Samuel Ball attained the age of twenty years, *138 and then intermarried with the present complainant Ecu lah. He soon afterwards, on the 15th May, 1775, made his will, whereby (inter, alia) he bequeathed his wife TbOOi. currency; and appointed her executrix, with a Mr. Yarborough. Samuel Ball dying soon after, Ms widow, who afterwards married Sealy the complainant, qualified on ^ie and required a settlement of Samuel Ball’s estate, from Henry Laurens the executor of Elias Ball. But he declined it, on the ground that by the testator Elias Ball’s will, the whole estate went to the surviving child Mrs. Hunt, now that all the other children were dead. Some question was made about the regularity of Samuel Ball’s marriage with the complainant Beulah, and the validity of his will; he being of weak mind, and under age, at the time of his marriage, will and death.
But there being' no proof of any imposition in the marriage, or of his imbecility amounting to more than ordinary weakness, these points were not insisted on at the hearing, and the cause was argued on the single ground, of what was the true construction of Elias Ball’s will, with respect to the survivorship among his children. Head and E. Rutledge contended for complainants, that the bequest was' not a joint tenancy, but a tenancy in common, and cited 1 Eq. Cas. abr. 292, 293. 3 Burr. 1881. 1 Salk. 226. 3 Bac. 478. Also 3 Atk. 17, to prove the right of Samuel to make a will, though under twenty-one years of age. Drayton for defendant cited, 2 Vern, 233, 617. 1 Vern. 23. 1 P. Wins. 304. 1 Wilson, 165, Hawes and Hawes. 1 Raymond, 441.
The court took time to consider this case, and in De - cember, 1787, chancellor Hutson delivered the opinion of chancellor Mathews and himself. Chancellor Rutledge having been absent at the time of the argument, attending the convention at Philadelphia, gave no opinion. — The opinion delivered is as follows:
“ The single point which the court is in this case called upon to decide is, whether from the words of the will of Elias Ball, his children are to be considered as joint-tenants or tenants in common. It will contribute not a little, we presume, towards forming an opinion in this *139 case, to premise two fundamental and incontrovertible maxims, which ought always to govern chancery in their decisions in such cases. The first is, that in the construction or exposition of wills, the intention of the testator, as far as it may be collected from the words of the testament, subject to a liberal'construction of law, sljbuld be primarily .and principally regarded; and in the second place, that the words of the will, should if possible, be so construed and expounded, as all to stand together, or in other words, that they may all have their due effect and operation. — We now proceed to examine the will before us upon these principles.
« The first devise runs in the words following: ‘ After all my just debts are paid, I give and bequeath my re* maining estate, both real and personal, to be equally divided amongst my children.’ The words ‘ equally divided,’ or ‘ to be equally divided,’ (whatever ambiguity may still adhere to them in the construction of deeds in the common law,) it has been long established in this court, beyond a possibility of doubt, that, in a will, they do, (unless otherwise clearly restricted or corrected,) uniformly create a tenancy in common, as well with regard to l’cal as personal estate. Were we therefore to stop here, not the least shadow of doubt could exist. But the suboequent clause, in the words following, < if my son William Ball, or any of my other children, happen to die, J, in that case, ordain and will the remaining pax't or pax’ts of his, hex’, or their interests, to he equally divided among my surviving heir or heirs,’ seems to induce somewhat of an appax’ent ambiguity". Should this clause not be admitted in the sense, which we shall in the sequel attempt to establish, it may constructively appear to constitute a suxwivorship, and to militate against the clause above recited; but when brought to the test of the aforementioned maxims, the seeming difficulty will, we presume vanish and disappear, The intentioxx of the testa-tox’, as far as it may he collected from the words of the first clause, subject to construction of law, appears manifestly to be, that all his childi’cix should be placed upon the foot of pex’fect equality, and that they should equally and *140 alike share the benefit or advantage to be derived from -*^s estate; but should the words in the subsequent clause, w^lou* restrictions or limitation prevail, this intention might be in the event totally defeated. Let us suppose, ^01' ú^stmme, that the clause in question should, in respect to time, he left vague, indefinite and indeterminate as it present stands, without any period for vesting being fixed, it would then follow by necessary and inevitable construction of law, that should three of the legatees marry and decease leaving issue, the survivor, who may have no issue, would take the whole estate, and might devise it away to an entire stranger, to the utter exclusion of the testator’s grand-children. But this no one can consistently with reason, and the most obvious legal construction of the first mentioned clause, suppose to have been his intention. Hence arises the apparent and absolute necessity of fixing and ascertaining some determinate period, at which the estates intended to be conveyed should vest. And here we must, as necessity enforces, revert to the two fundamental maxims first laid down, that the apparent intention of the testator should be preserved, and that the words of the will should all he so construed and interpreted, as to have their full effect and operation. That the intention of the testator, as expressed in the first clause, according to legal construction, would not he preserved, if the time should be left entirely vague and indefinite, we think, has been made sufficiently to appear, as, in that case, one heir might eventually take to the entire exclusion of the representatives of the rest. And if the latter words should be supposed to create a joint-tenancy, the former words, 4 to bo equally divided,’ which,- as has been before observed, do indisputably, in the exposition of wills in this court, create a tenancy in common, would he altogether superfluous, nugatory and inefficient.
44 From this train of reasoning, the court And themselves constrained to adopt a construction, in which they think themselves warranted and supported by a crowd of concurrent authorities; which is, that when, in any instance, the words 4 equally to be divided’ are made use oi" *141 in one part of a will, and the naked and indefinite expressions * if any should die, his share shall go to the suivi-vor,’ is introduced in another part, it must be intended, if any of the legatees should die in the life-time of the testa-j j j o j j tor; as by that construction, every word of the will will have its effect and operation; and the constructive consequence of a lapsed legacy will be effectually barred. Nor do we think ourselves warranted to adopt any other utraction, as the arrival at a certain age, or the event of marriage, these periods with respect to many purposes in Jaw being wholly arbitrary, and entirely at the discretion of the testator. — -To our interpretation, it has been objected by the counsel for the defendant, that it could not have been the intention of the testator, in the present instance, as he was in a declining state of health at the time of making his will, and did not survive long. — To this it may be opposed, that however nearly impending the period of dissolution may appear, it is not uncommon for mankind to flatter themselves with an extension of the thread of life; and we well know that a general prejudice, however ill-founded, prevails against making wills. The testator therefore might have intended, in case of recovery, that the present will should continue for a length of time. — But to support the contrary doctrine, the case of Hawes and Hawes has been quoted. Upon this case it is to he observed, that the opinion of the court was there grounded upon the custom of London, which fixes the precise time at which children are to take legacies, which is not the case here.
“ And the lord chancellor says, he thinks lord Cowper’s reasoning, in the case of Bindon and Suffolk, was very right; that the surviving must he applied to some particular time, and not to a dying indefinitely. He thought, dying in the testator's life was the time intended; but the house of lords adjudged it to he the time of payment, from the nature of the debt, as it was on government security. But if there can be no other construction upon his will, he goes on to observe, then his shall prevail. But this custom does not prevail here, as was before observed, and there is no similar circumstance to designate *142 the time of payment over; but the legacy is entirely un. fettered and unincumbered, and might have been trams-ferah]e¡, the day after the death of the testator. To us it appears therefore, that the present case would by no means have warranted the reversal of the lords,* but that lord Cowper’s decree would have stood firm and unshaken. Nay it is supported by a subsequent determination, in 1 Eq. Cas. abr. 292, 293. — Upon the whole, we think ourselves fully warranted by law, reason, and precedent, to adopt the construction mentioned above, that the testator intended that the estate should pass to the survivors in case only of the decease of any of the legatees antecedent to his death.
i* b. p. 132.
« And it is therefore decreed, that the defendant Henry Laurens, do render an account, and pay over to the comptajuants, the one half of the estate of Elias Hall, tp which Ms son Samuel was, at the time of his death, and under the will of the said Elias Ball, his father, entitled; And the defendant do pay the costs of suit from the proceeds of the estate.